IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

KENNETH LEE ANDERSON,            )
                                 )
    Plaintiff,                   )
                                 )
VS.                              )      No. 13-1066-JDT-egb
                                 )
DERRICK SCHOFIELD, ET AL.,       )
                                 )
    Defendants.                  )

ORDER DENYING MISCELLANEOUS MOTIONS,
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On February 22, 2013, the *pro se* Plaintiff, Kenneth Lee Anderson, Tennessee Department of Correction ("TDOC") prisoner number 265300, who was, at the time, incarcerated at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee, filed a complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) The Court subsequently granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) On June 6, 2013, the Court dismissed the complaint for failure to state a claim but granted leave to amend. (ECF No. 6.) Plaintiff filed a timely amended complaint on August 7, 2013. (ECF No. 9.) On August 15, 2013, the Court dismissed the amended complaint except for Plaintiff's retaliation claims against Defendants David Abel, Joni McElrey, and Jeff Tarver

and directed that process be issued and served. (ECF No. 10.) On April 1, 2014, Plaintiff notified the Clerk he had been transferred to the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee. (ECF No. 34.)

On July 17, 2014, Defendants filed a motion for summary judgment. (ECF No. 39.) Plaintiff responded with a document on July 29, 2014, titled "Notice of Inability to Adequately Continue to Prosecute Due to Being Denied Access To 'Any' Necessary Legal Materials." (ECF No. 40.) He contended that he was in protective custody at the WTSP and did not have access to the materials he needed to prosecute this case, including access to a typewriter, a computer to perform legal research, current legal books, and a telephone in order to make calls to the Court. He asked the Court to order the WTSP officials to provide him with those things, appoint someone with legal training to assist him, or hold this case in abeyance until he was taken off protective custody and could have physical access to the prison law library. Defendants filed a response in opposition to Plaintiff's requests (ECF No. 41), and Plaintiff filed a reply, which he designated as a "motion" to deny the Defendants' response (ECF No. 42).

Even if the Court were inclined to do so, an order requiring WTSP prison officials to grant Plaintiff the legal materials and/or assistance he wants would not be possible. The allegations in this case involve events at the NWCX, not WTSP, and no WTSP officials are parties to this action. Therefore, Plaintiff's request for such an order, and his motion to "deny" Defendants' response, is DENIED. In addition, although the Court did not officially grant Plaintiff's request to hold this case in abeyance, several months have now passed since

the filing of the Defendants' motion for summary judgment and Plaintiff's "Notice." Plaintiff has filed nothing further advising whether he remains in protective custody. The Court concludes that further delay in ruling on the Defendants' motion would not be appropriate.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[1] or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

In *Celotex Corp.*, the Supreme Court explained that Rule 56:

---

[1] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

3

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. However, where the party moving for summary judgment also has the burden of persuasion at trial, the initial burden on summary judgment is higher. Under those circumstances, the moving party must show "that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (internal quotation marks omitted).

In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

4

The fact that Plaintiff did not respond does not require granting Defendants' motion. Nevertheless, if the allegations of the complaint are contravened by Defendants' evidence and Defendants are entitled to judgment as a matter of law on those facts, then summary judgment is appropriate. *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979).

In the order partially dismissing the amended complaint, the Court summarized Plaintiff's claims as follows:

> [O]n or about October 4, 2011, Plaintiff made Defendant Bratton aware that he was representing himself in a pending criminal case. Plaintiff told Bratton that he needed access to a telephone and a law library. Bratton ordered Defendants Barnes and Morton to allow Plaintiff to leave his cell to place legal calls as needed. Plaintiff was to use the prison's inmate telephone system to place his calls and was to use his "own access" to contact the legal departments or offices. This means that Plaintiff would telephone his wife, who would then place a three-way telephone call to the legal departments requested by Plaintiff. Plaintiff used this method of placing legal calls from October 4, 2011, through December 1, 2011. ([ECF No. 9 at 1.])
>
> When Plaintiff was relocated to the Protective Custody Housing Unit, his television was lost or stolen. Plaintiff avers that the loss of his television was attributable to the negligence of unidentified NWCX staff. Plaintiff immediately initiated "in house" procedures to obtain compensation for his television. Plaintiff filed a *pro se* claim with the Tennessee Department of Treasury's Division of Claims Administration on October 27, 2011. (*Id.* at 2.)[ ]
>
> . . . .
>
> On November 16, 2011, Plaintiff submitted an inmate request form asking Defendant McElrey to notarize a *pro se* Motion for Pre-Trial Conference, which he intended to file in his criminal case. The filing was time sensitive. In that filing, Plaintiff planned to attack the credibility of a witness for the State and, if he were unsuccessful, he planned to accept a six-year plea offer at 30%. Because Defendant McElrey failed to respond to the request, Plaintiff had no time to seek another pretrial conference and no opportunity to

settle the pending charge. Instead, the case was tried and Plaintiff was sentenced to a term of imprisonment of twelve years at 45%. (*Id.*)

On December 1, 2011, Defendants Bratton, Morton, and McElrey were served with subpoenas to appear in the Dyer County Circuit Court. On that date, Plaintiff also received a letter from the Division of Claims Administration advising that he was entitled to reimbursement for his lost television but stating that, under TDOC policy, the maximum payment for a lost television was $50. (*Id.* at 2; *see also* [ECF No.] 9-3.) Plaintiff believed the offer to be inadequate because his television cost $219.75 and was fairly new. ([ECF No.] 9 at 2-3.) He refused the $50 offer, and he believed that he was required to telephone the Division of Claims Administration so that the check could be canceled. (*Id.* at 3.)[ ] Plaintiff told Defendant Tarver that he intended to refuse the offer, and Tarver "grew very, very, very aggressive and argued that the Plaintiff had to accept the offered settlement." (*Id.*) During that conversation, Tarver allegedly shouted at Plaintiff that he did not like having members of the Unit Team subpoenaed. Plaintiff asked whether anyone on the Team was against him because of the subpoenas, and Tarver replied that he was against Plaintiff and ordered him back to his cell. (*Id.*)

At that point, Plaintiff asked Defendant Barnes to allow him to make a legal call to the Tennessee Claims Commission. Tarver allegedly interrupted the conversation, ordered Defendant Morton to escort Plaintiff to his cell, and directed that he could not make that legal call. Plaintiff avers that he fully complied with Tarver's order while attempting to explain that Defendant Bratton had given him permission to be outside his cell to place legal calls. Tarver, who was allegedly "in a rage," insisted that Morton put Plaintiff in his cell and not allow him to call the Claims Commission. (*Id.*)

Approximately twenty to twenty-five minutes later, Defendant Morton let Plaintiff out of his cell to call the Claims Commission.[ ] During the call, Defendant Tarver asked Defendant Abel to use the institution's computer/telephone system to "interrupt/listen" to the call to verify that it was a legal call. Abel "interrupted" the call and told Tarver that Plaintiff was speaking to a woman at his home telephone number, who then placed a three-way call to the Tennessee Claims Commission.[ ] Thus, Abel confirmed to Tarver that Plaintiff was placing a legal call. Tarver allegedly ordered Defendant Barnes to issue Plaintiff a disciplinary write-up for Abuse of Telephone Privileges, a Class B infraction. (*Id.* at 3-4.)[ ]

(ECF No. 10 at 2-6 (footnotes omitted).)

In support of the motion for summary judgment, Defendants have submitted excerpts from Plaintiff's deposition testimony (ECF No. 39-4), the affidavit of NWCX Grievance Chairperson Cynthia Casagrande (Casagrande Aff., ECF No. 39-5), and the affidavits of Defendants Tarver and Abel (Tarver Aff., ECF No. 39-6; Abel Aff., ECF No. 39-7).

In his deposition testimony, Plaintiff clarified that he is alleging the Defendants retaliated against him because he had subpoenas issued for McElrey, Morton, and Bratton to appear and testify at his criminal trial. (ECF No. 39-4 at 4-5.) Specifically, Plaintiff alleges that on November 16, 2011, he requested Defendant McElrey to notarize a time-sensitive motion he needed to file in his criminal proceeding, but she failed to do so in retaliation, causing him to be unable to file the motion. (ECF No. 9 at 2; ECF No. 39-4 at 6-7.) As to Defendants Tarver and Abel, Plaintiff alleges that they retaliated against him by imposing the disciplinary infraction for abuse of telephone privileges. (ECF No. 9 at 3-4; ECF No. 39-4 at 8.)

Defendants first contend that Plaintiff's retaliation claims are barred by the applicable statute of limitations. The statute of limitations for an action brought pursuant to 42 U.S.C. § 1983 is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tennessee Code Annotated § 28-3-104(a)(3). *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir.

7

2000); *Berndt v. Tenn.*, 796 F.2d 879, 883 (6th Cir. 1986). The complaint in this case was received and docketed on February 22, 2013, but Plaintiff executed the complaint and certified that he gave it to prison officials for mailing on February 11, 2013. (ECF No. 1.) Thus, in order to be timely, Plaintiff's retaliation claims must have accrued no earlier than February 11, 2012.

Plaintiff alleges that he asked Defendant McElrey to notarize his motion on November 16, 2011, and she was served with the trial subpoena on December 1, 2011, one day prior to the trial.[2] With regard to Defendants Tarver and Abel, Plaintiff was issued a disciplinary infraction for abuse of telephone privileges on December 2, 2011, for the incident that occurred on December 1, 2011. (Tarver Aff. ¶ 4, ECF No. 39-6 at 1; *id.,* Ex. A at 2-9.) A disciplinary hearing was held on December 28, 2011, and Plaintiff was convicted of the charge. Plaintiff appealed, and the Warden affirmed the conviction on January 6, 2012. (*Id.* ¶¶ 6-7 at 1 & Ex. A at 10-22.)

On January 4, 2012, Plaintiff filed a grievance and Title VI complaint, #T243708, complaining about the interception of his telephone call concerning a legal matter. (Casagrande Aff. ¶¶ 4-5, ECF No. 39-5 at 1; *id.,* Ex. A at 3-6.) The grievance was returned as inappropriate by Grievance Chairperson Casagrande on January 5, 2012, because it concerned a disciplinary matter. (*Id.* ¶ 6 at 1 & Ex. B at 7.) Also on January 5, 2012,

---

[2] Plaintiff does not allege, and there is no evidence in the record, that McElrey was aware Plaintiff intended to subpoena her before she was actually served on December 1, 2011. Therefore, McElrey could not have retaliated against Plaintiff for that reason on November 16, 2011, two weeks earlier.

NWCX Deputy Warden Brenda Jones determined that the grievance was not a Title VI grievance. (*Id.* ¶ 8 at 1 & Ex. D at 9.) Plaintiff did not appeal the grievance to the next level. (*Id.* ¶ 7 at 1 & Ex. C at 8.)[3]

The undisputed evidence in the record shows that all of Plaintiff's retaliation claims accrued before February 11, 2012. Therefore, the claims are time barred.

Defendant McElrey contends that the retaliation claim against her is also barred because Plaintiff failed to exhaust his administrative remedies with regard to that alleged incident. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). However, a prisoner is not required to demonstrate exhaustion in his complaint. *Id.* at 216. Failure to exhaust is an affirmative defense on which the defendant has the burden of proof. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011); *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

---

[3] In the amended complaint, Plaintiff alleges that he appealed Deputy Warden Jones's Title VI determination to TDOC Commissioner Derrick Schofield and that Schofield concurred with her decision on August 5, 2012. However, Plaintiff has submitted no evidence confirming any such appeal. The only grievance document in the record from August 2012 is a determination by Jones, dated August 20, 2012, that a different grievance filed by Plaintiff, #T252471, also was not a Title VI grievance. (ECF No. 9-8.)

In this case, Plaintiff conceded in his deposition that he did not file a grievance against Defendant McElrey. (ECF No. 39-4 at 8.) Therefore, the claim against her is subject to dismissal for that reason as well.

Defendants Tarver and Abel also contend that Plaintiff cannot show that the disciplinary charge for abuse of telephone privileges was imposed in retaliation for serving the subpoenas. In *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc), the Sixth Circuit confirmed the elements of a First Amendment retaliation claim:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.* at 394.

If a prisoner can "[establish] that his protected conduct was a motivating factor behind any harm," the burden then shifts to the defendant to "show that he would have taken the same action in the absence of the protected activity." *Id.* at 399. Furthermore, a finding of guilt on the underlying misconduct satisfies the defendant's burden of showing that an allegedly retaliatory disciplinary charge would have been brought even in the absence of the protected conduct. *See Wilson v. Wellman*, No. 99-2377, 2000 WL 1829265, at *2 (6th Cir. Dec. 6, 2000); *Robinson v. Shewalter*, No. 00-3211, 2000 WL 1829118, at *2 (6th Cir. Dec. 6, 2000); *Owens v. Johnson*, No. 99-2094, 2000 WL 876766, at *2 (6th Cir. June 23, 2000).

Plaintiff was given a hearing and convicted of the disciplinary charge of abuse of telephone privileges. Therefore, his claim for retaliation against Defendants Tarver and Abel also fails for that reason.

For all of these reasons, the Court finds there are no genuine issues of material fact for trial and that the Defendants are entitled to judgment as a matter of law. Therefore, the motion for summary judgment is GRANTED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* The same considerations that lead the Court to grant summary judgment also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take

advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                         s/ **James D. Todd**
                         JAMES D. TODD
                         UNITED STATES DISTRICT JUDGE